UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re:<br><br>UTE LAKE RANCH, INC.,<br><br>Debtor. | Case No. 16-17054 EEB<br>Chapter 11 |
| In re:<br><br>DVR, LLC,<br><br>Debtor. | Case No. 16-17064 EEB<br>Chapter 11 |
| | **Jointly Administered Under<br>Case No. 16-17054 EEB** |

**ORDER FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

THIS MATTER comes before the Court on the Motion to Dismiss or Convert Chapter 11 Cases Pursuant to 11 U.S.C. § 1112(b), or, in the Alternative, to Direct the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a) ("Motion") filed by the United States Trustee ("UST"), and the objection filed by Cordes & Company, Inc. ("Cordes") on behalf of the Debtors. The UST's motion was joined by creditors Barry Freeman and New Lake, LLC. The Debtors' objection was joined by creditor Sidney Strebeck. For the reasons set forth below, the Court finds there is cause for appointment of a chapter 11 trustee in these cases.

**I. BACKGROUND**

Debtor Ute Lake Ranch, Inc. ("ULR") is a Colorado corporation and Debtor DVR, LLC is a Colorado limited liability company, both of which were formed to own and develop real estate located in New Mexico near the Ute Reservoir. In 2009, the shareholders and members of the Debtors became embroiled in disputes, which led to litigation before the Arapahoe County District Court (the "State Court"). Following a trial in 2012, the State Court issued findings in which it concluded that it lacked sufficient information to determine whether Debtors should be dissolved, but that the Debtors' assets were in danger of being lost or destroyed. Accordingly, on December 21, 2012, the State Court issued an order (the "Receiver Order"), appointing Cordes as "Receiver and Custodian" of the Debtors, under the Colorado corporate judicial dissolution statutes, Colo. Rev. Stat. § 7-114-303 (for corporations) and § 7-80-812 (for limited liability companies). The Receiver Order gave Cordes broad powers, including the power to take possession of all of Debtors assets, to "undertake the day-to-day operation, management, and control" of the Debtors and the power to "act on behalf of [Debtors] without further approval, input and/or interference from the officers, directors, or shareholders of [Ute Lake Ranch] or management member of members of DVR." Receiver Order, at 1-2. Essentially, Cordes replaced the Debtors' management and has been managing the Debtors' operations, with State Court supervision, since entry of the Receiver Order.

Eventually, Cordes recommended to the State Court that the Debtors' assets should be liquidated and the State Court authorized Cordes to implement its recommendation. Insider Barry Freeman, however, attempted at each turn to block Cordes' attempts to sell the property. In response, the State Court entered an order on July 1, 2016 (the "July 1 Order"), concluding it was "in the best interest of the Receivership Estate and the Companies for the Companies to file bankruptcy in order to put the estate before a court with greater ability to effectuate the sale of the estate." It directed Cordes to "forthwith initiate bankruptcy proceedings." There is an attachment to the July 1 Order that contains additional provisions describing Cordes' powers relative to a bankruptcy filing. The attachment, which appears to have been drafted by counsel for Cordes and then stamped by the State Court, establishes Cordes as the "authorized officer, manager and representative" of Debtors for all purposes to effectuate a bankruptcy filing. It also purports to give Cordes the authority to "operate the [the Debtors] as debtors-in-possession" and to "remain in possession, custody and control of the bankruptcy estates."

Cordes caused Debtors to file chapter 11 bankruptcy petitions on July 18, 2016. The UST then filed its Motion, arguing that Cordes is a "custodian" as that term is defined by the Bankruptcy Code and, therefore, pursuant to 11 U.S.C. § 543, Cordes is prohibited from administering the Debtors' property and must turnover that property to the debtors-in-possession. However, because the State Court has already determined that the Debtors' prior management had mismanaged Debtors' affairs, that management cannot and should not be reinstated. As a result, the UST argues there is a "vacuum of bankruptcy management" for the Debtors, necessitating either dismissal, conversion, or the appointment of a chapter 11 trustee.

Cordes disputes it is a "custodian" subject to § 543. Instead, Cordes argues that it is functioning only as the manager of Debtors, as authorized by the July 1 Order. It asserts that, once it filed the Debtors' bankruptcy petitions, the receivership action was stayed and, therefore, its role as "receiver" and "custodian" under state law was "effectively terminated."

## II. DISCUSSION

### A. Is Cordes a "Custodian" Subject to 11 U.S.C. § 543?

The Code has strict limitations on what a "custodian," in possession of a debtor's property on the petition date, may do with that property. Pursuant to § 543, a custodian "may not make any disbursement from, or take any action in the administration of, property of the debtor . . . or property of the estate," and must deliver all such property to the trustee. 11 U.S.C. § 543(a), (b). In this case, the parties' dispute centers on whether Cordes is a "custodian" subject to the requirements of § 543. Section § 101(11) defines the term "custodian" as:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of

2

> enforcing a lien against such property, or for the purpose of general
> administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11). Subsection (B) is not applicable. The question is whether Cordes falls under either subsection (A) or (C) as a "receiver," "trustee," or "agent" appointed or authorized to take charge of property of the Debtors in order to administer that property for the benefit of creditors.

Courts have interpreted the Code's definition of "custodian" broadly. As noted by the Seventh Circuit, "the legislative history of section 101(11) indicates that Congress intended the term 'custodian' to encompass a variety of prepetition agents." *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 553 (7th Cir. 1985). That legislative history provides that:

> Paragraph (10) [now (11)] defines "custodian." There is no similar definition in current law. It is defined to facilitate drafting, and means prepetition liquidator of the debtor's property, such as an assignee for the benefit of creditors, a receiver of the debtor's property, or a liquidator or administrator of the debtor's property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee.

H.R. Rep. No. 95-595, at 310 (1978). The Seventh Circuit rejected an argument that the term should be construed narrowly to include only prepetition liquidators who simply hold the debtor's property. Instead, the Court found that the categories of custodians listed in §101(11) are "descriptive rather than exhaustive" and that "Congress defined the term broadly to include third parties who have taken charge of the debtor's assets for the general benefit of creditors." The Seventh Circuit went on to determine that an "administrative receiver" appointed under Illinois law that had the power to operate the debtor's business, to hold title to the debtor's assets, and to liquidate those assets under court supervision was a "custodian" under § 101(11).

There is little doubt that Cordes, in its role as the State Court-appointed receiver and custodian of Debtors qualifies as a "custodian" under the Code's definition of that term in § 101(11). The Colorado corporate dissolution statutes pursuant to which Cordes was appointed provide that a state court overseeing a corporate dissolution may appoint one or more "receivers to wind up and liquidate, or one or more custodians to manage, the business and affairs of the corporation." Colo. Rev. Stat. § 7-114-303(1). Identical provisions exists for limited liability companies ("LLCs"). Colo. Rev. Stat. § 7-80-812(1). The statutes are flexible, giving examples of the powers that a court may give to a receiver or custodian and allowing those powers to be amended as necessary. The primary difference between a "receiver" and a "custodian" appears to be that a receiver typically liquidates property, whereas a custodian also has authority to manage the affairs of the corporation or LLC "in the best interests of shareholders [or members in the case of LLCs] and creditors." In this case, the distinction makes little difference because the State Court appointed Cordes to be both a receiver and a custodian for the Debtors, with the power to liquidate the Debtors' assets, to manage the Debtors' operations, and to generally act on behalf of the Debtors without interference from prior management.

Cordes appears to acknowledge its § 101(11) "custodian" status, at least in the prepetition context. Indeed, Cordes asserts that it is entitled to an administrative claim for the work it did as a prepetition custodian pursuant to § 503(b)(3)(E). Nevertheless, Cordes tries to distance itself from its custodian status by arguing that, following filing of the petitions, the July 1 Order changed its status from custodian to that of manager of the Debtors, thereby allowing it to function as the Debtors-in-possession. No doubt Cordes' argument is structured so as to demonstrate that these cases are similar to the facts of *In re Bayou*, 363 B.R. 674 (S.D.N.Y. 2007), *aff'd*, 564 F.3d 541 (2d Cir. 2009). In *Bayou*, both the district court and the Second Circuit held that a prepetition receiver appointed by the district court under federal law was not a "custodian" under the Code and denied a similar motion to dismiss or convert filed by the UST. This Court does not find the reasoning of the *Bayou* decision particularly compelling, and in any event, it is not controlling authority and its facts and reasoning are distinguishable.

In *Bayou*, the debtor and various related entities had operated a Ponzi scheme. Prepetition, the federal district court appointed an individual named Jeff Marwil to serve as a federal equity receiver and as the managing member of the debtor. Marwil later caused the debtor to file a bankruptcy petition and the UST moved to appoint a chapter 11 trustee, arguing Marwil was a custodian who must turnover the debtor's property under § 543. The bankruptcy court denied the UST's motion. On appeal, the district court noted that the parties agreed that Marwil's role as receiver—which was limited due to the fact that most of the debtor's assets had already been forfeited in prior criminal proceedings—terminated upon filing of the petition and that the question at issue was whether Marwil's role as corporate manager of the debtor was derived solely from the receivership appointment and, therefore, also terminated upon filing. Interpreting its own prior appointment order, the district court concluded that, while it had appointed Marwil as a receiver under a federal receivership statute, it had also appointed him as corporate manager pursuant to different authority—namely "federal securities laws and the court's inherent authority." *In re Bayou*, 363 B.R. at 684. Since its corporate management appointment had been made pursuant to different authority, the district court concluded that Marwil's management role did not end with the termination of the receivership. To hold otherwise would "frustrate" the equitable power of that court to fashion an appropriate remedy under federal law. *Id.* at 685.

Thus, the primary rationale behind the *Bayou* court's decision was that it invoked a different *source of the authority* in appointing Marwil corporate manager than it did in appointing him a receiver.[1] It was not simply that Marwil had a dual role as both a receiver and a manager, but that his manager duties had been given separately pursuant to that federal court's inherent authority. Indeed, the *Bayou* court acknowledged that it could have appointed Marwil

---

[1] This Court fails to see why the source of authority behind an appointment should make a difference in determining custodian status under § 110(11). As noted above, the definition of "custodian" in § 101(11) was intended to be broad to include any "agent" appointed to take charge of property of the debtor for the purpose of administering that property for the benefit of the debtor's creditors. Thus, the focus should be on the agent in question and whether its duties include administration of property for the benefit of creditors—not the source of appointing authority's power. An agent appointed as the "corporate manager" of a debtor to do just that, i.e. administer the debtor's business for the benefit of creditors under a court's supervision, clearly falls within the definition of custodian whatever title that agent is given and whatever source of authority the appointing court invokes. *E.g., In re Redman Oil Co.*, Inc., 95 B.R. 516, 521 (Bankr. S.D. Ohio 1988) (finding the definition of "custodian" broad enough to include entity appointed by state court to manage, rather than liquidate, the debtor's business for the general protection of its creditors).

4

as both a manager and a receiver under the federal receivership statute. If both appointments had been made solely pursuant to that statute, then Marwil's corporate management powers would have ended along with his receiver powers under § 543 when the bankruptcy was filed. *In re Bayou*, 363 B.R. at 684 ("Had I appointed him solely pursuant to these receivership statutes, then the U.S. Trustee would be correct that his corporate management powers ceased the moment he caused Bayou to file for bankruptcy. *See* 11 U.S.C. § 543."). The district court also noted that it could have appointed Marwil as both a corporate manager and a receiver under applicable state receivership law, but because the parties had not argued state law at trial, the district court did not make any appointment under state law. The Second Circuit later rejected the UST's attempt to argue state law on appeal because that issue was not timely raised. *In re Bayou*, 564 F.3d at 548.

Cordes attempts to liken this case to the facts of *Bayou* by arguing that the July 1 Order "is a different authorization" than the Receiver Order and, therefore, the powers granted by the July 1 Order are not derivative of the Receiver Order. Cordes characterizes the July 1 Order as "effectively terminating" the Receiver Order's prior appointment of Cordes as receiver and custodian under the Colorado corporate dissolution statutes and granting Cordes separate and new powers as a manager. This Court, however, reads the July 1 Order as a continuation of the Receiver Order and a continuation of Cordes' role as receiver and custodian.

Under Colorado law, a court-appointed receiver or custodian serves as an officer and fiduciary of the state court and the persons interested in the receivership estate. *Midland Bank v. Galley Co.*, 971 P.2d 273, 276 (Colo. App. 1998); *K-Partners III, Ltd. v. WLM Hospitality Corp.*, 883 P.2d 604, 606 (Colo. App. 1994). A receiver can exercise only such powers as are expressly conferred by the appointing court. *Midland Bank*, 971 P.2d at 276. The appointing court retains jurisdiction over the receiver until a final order discharging the receiver is entered. *Id.* Here, the Receiver Order clearly references Colo. Rev. Stat. § 7-114-303 and § 7-80-812 as the grounds for appointment of Cordes as custodian and receiver. Pursuant to those statutes, the State Court gave Cordes the authority to manage the Debtors for the benefit of Debtors' shareholders, members, and creditors. The July 1 Order instructs Cordes to file bankruptcy petitions and specifies that Cordes has the management authority necessary to effectuate that filing. Nothing in the July 1 Order indicates that the State Court was terminating or discharging Cordes as receiver/custodian, nor does it explicitly stay or suspend the receivership action, nor Cordes' roles as receiver and custodian. The only thing that the July 1 Order suspends is Cordes' obligation to file reports with the State Court during the bankruptcy case. However, the Order goes on to require Debtor to file a status report with the State Court once the bankruptcy case is complete, which is evidence that Cordes' receivership and custodianship remain pending.

More importantly, there is no indication that the State Court was invoking some alternate statute or other source of authority when it issued the July 1 Order. Instead, the State Court states that a bankruptcy filing is in the best interests of the "Receivership Estate." Cordes does not identify any alternate source of authority pursuant to which the State Court could have issued the July 1 Order and given management authority to Cordes. Indeed, Cordes states that, when the State Court issued the July 1 Order, it was exercising its "statutory authority" under the Colorado dissolution statutes—Colo. Rev. Stat. §§ 7-114-303(3) and § 7-80-812(3)—to "amend" the powers it already granted to Cordes as receiver/custodian under those same statutes. Cordes Objection, at ¶ 44.

5

In its own research, this Court has been unable to locate any state law that would have given the State Court authority to appoint Cordes as manager of Debtors *independent of*, rather than pursuant to, its role as custodian and receiver.  While the *Bayou* court relied on its inherent authority or equitable powers under federal securities law to somehow fashion an appointment independent of the federal receivership statute, there does not appear to be any corresponding power under Colorado law.  Certainly, Colorado courts have, in the past, relied on equitable powers to fashion remedies to resolve corporate disputes, but the remedy imposed in such situations is the appointment of a receiver to take over management.  *E.g.*, *Eureka Coal Co. v. McGowan*, 212 P. 521(Colo. 1922) (exercising equity authority to appoint receiver where corporate owners were deadlocked over control of property); *Burleson v. Hayutin*, 273 P.2d 124 (Colo. 1954) (finding appointment of a receiver appropriate "where there is such dissension among the stockholders, directors or officers that the corporation cannot successfully carry on its corporate functions; that imminent danger of loss of assets is threatened; and that no other remedy appears to be adequate").  The appointment of a receiver in such situations makes sense given that a receiver reports to, and acts as a fiduciary for, the appointing court, whereas appointment of a manager who is not a receiver or custodian would presumably have duties only to the corporation.

It is also notable that Colorado law prohibits a corporation from serving as the officer of another corporation, instead requiring that an officer be a natural person.  *See* Colo. Rev. Stat. § 7-108-301(1) ("An officer shall be an individual who is eighteen years of age or older."); Colo. Rev. Stat. § 7-90-102(31.5) ("'individual' means a natural person").  The corporate dissolution statutes create an exception to this rule by allowing a state court to appoint a custodian to serve "through or in place of its board of directors or officers."  Colo. Rev. Stat. § 7-114-303(3)(b).  A court-appointed receiver or custodian is frequently a corporate entity (such as Cordes) rather than an individual.  The exception provided by the dissolution statute, however, is limited—only a corporate entity serving as court-appointed custodian may be appointed as an officer of a corporation.  As such, Cordes may only serve as an officer of Debtor ULR through its role as a court-appointed custodian.[2]  If, as Cordes argues, its role as a court-appointed custodian ended on the petition date, so did its ability to serve as an officer of ULR under Colorado law.

The Court acknowledges that the July 1 Order contains language indicating that it was the intent of the State Court that Cordes "automatically continue to oversee [the Debtors'] operations as debtors-in-possession" and "remain in possession, custody and control of the bankruptcy estates" following filing of the petitions.  July 1 Order, ¶ 6, 12.  However, the State Court was without jurisdiction to decide Cordes' status under the Bankruptcy Code.  Even the *Bayou* court recognized that the decision as to whether someone is qualified as a debtor-in-possession under the Bankruptcy Code is "quintessentially the province of a bankruptcy judge."  *In re Bayou*, 363 B.R. at 686.  And while the *Bayou* court went on to find that it had authority under federal law to appoint Marwil as a corporate manager separate and apart from his receivership status, the State Court, as discussed above, had no such authority under Colorado law.  Without that authority, there could be no separate management appointment that could "automatically blossom" into debtor-in-possession status, as found by the *Bayou* court.  *Id.* at 687.  Rather, all of the powers the State Court granted to Cordes were pursuant to the Colorado dissolution statutes and, as such,

---

[2] There is no similar restriction on who may serve as an officer, agent, member or manager of an LLC.  *See* Colo. Rev. Stat. § 7-80-102.

6

any powers bestowed by the July 1 Order were granted to Cordes *as a receiver and custodian* for Debtors.  Cordes' role as manager of Debtors is wholly derivative of, and pursuant to, its status as court-appointed receiver and custodian.  Cordes was, and remains, a "custodian" of Debtors as that term is defined by § 110(11).

The Court also acknowledges that, practically speaking, Cordes, as an individual, may be best suited to manage the Debtors given his past experience and familiarity with Debtors' assets and creditors.  Nevertheless, the Court cannot ignore the plain requirements of § 543.  In this Court's view, applying the *Bayou* decision's reasoning to the facts of this case would create the proverbial "exception that swallows the rule."  Any state court-appointed receiver or custodian could avoid the prohibitions of § 543 by simply asking the state court to change its title to "manager" just prior to a bankruptcy filing.  The wording of the July 1 Order would become a roadmap for court-appointed receivers and custodians to retain control of a debtor's assets in bankruptcy.  This Court declines to adopt such an interpretation.  Cordes remains a "custodian" appointed by the State Court and, therefore, must abide by the requirements of § 543.

### B.  Appointment of a Chapter 11 Trustee

Upon filing of a motion under 11 U.S.C. § 1112(b)(1), a court may convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, "for cause" unless the court determines that appointment of a trustee or examiner is in the best interests of the creditors and the estate.  Section 1104(a) gives a court discretion to appoint a chapter 11 trustee "for cause," or if it finds that such appointment is in the best interests of creditors.  The Code provides a list of examples of "cause" for dismissal or conversion in § 1112(b)(4) and for appointment of a trustee in § 1104(a)(1).  Both of these lists are non-exhaustive.  *See Pacific Rim Investments, LLP v. Oriam, LLC (In re Pacific Rim Investments, LLP)*, 243 B.R. 768, 771 (D. Colo. 2000); *Okla. Refining Co. v. Blaik (In re Okla. Refining Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988).  Although not included in either list, the Court finds that the unique circumstances of this case constitute cause for either dismissal, conversion, or appointment of a trustee.

As a custodian, Cordes cannot administer the Debtors' property in this case and cannot effectuate a liquidation plan for the Debtors.  Section 543(d) allows a custodian to be excused from turning over property of the estate in certain circumstances, but Cordes acknowledges that it does not seek such an order.  There appears to be no other competent management for Debtors that could step in and allow Debtors to function as debtors-in possession.  The State Court previously found that Debtors' prior principal, Barry Freedman, had mismanaged Debtor DVR, LLC and breached his fiduciary duty as to Debtor Ute Lake Ranch.  There is, as the UST argues, a management "vacuum" in this case.

At the preliminary hearing on the UST's Motion, both the UST and Cordes expressed their beliefs that dismissal of these cases would not be the best option for Debtors' creditors.  Upon dismissal, Cordes could remain as receiver and custodian, but Debtors would again be facing the same road blocks to dissolution that prompted the State Court to order Cordes to file bankruptcy in the first instance.  One of Debtors' creditors, Mr. Strebeck, favored dismissal if Cordes could not continue as debtor-in-possession, but did not specify how Cordes would be able to accomplish liquidation (including the sale of Debtors' real property to Mr. Strebeck) without the benefits of § 363(f).

The UST and at least one creditor, New Lake, LLC, favor conversion of the case to chapter 7, because the goal of both cases is liquidation and there is no real ongoing business to reorganize.  However, the UST was open to appointment of a chapter 11 trustee if there were some yet-to-be identified benefits to these cases remaining in chapter 11.  Counsel for Cordes identified one such benefit, namely that the sixty-day deadline in § 365(d)(1) for assumption or rejection of leases in a chapter 7 case would not apply and a chapter 11 trustee would have more flexibility to accept or reject leases at any time prior to plan confirmation.  This flexibility could be important given that Debtor DVR leases in excess of 12,000 acres of pasture land from the State of New Mexico and also has at least one grazing lease for a portion of its land.  Cordes characterized these leases as important assets of the Debtors.

Considering all of these circumstances, the Court finds it is in the best interests of creditors and the estate to appoint a chapter 11 trustee.  The Court understands and sympathizes with the practical concerns raised by Cordes and Mr. Strebeck.  Cordes and their counsel are already very familiar with the Debtors and their assets.  There has been no suggestion that Cordes or its counsel lack the qualifications or skills necessary to liquidate Debtors' assets.  Indeed, it is not outside the realm of possibility that the UST would appoint Mr. Cordes as the chapter 11 trustee.  *See Ritchie Special Credit Invest., Ltd. v. U.S. Trustee*, 620 F.3d 847 (8th Cir. 2010) (affirming appointment of former receiver as a chapter 11 trustee).  However, Cordes must be "disinterested" for such an appointment to be possible, and its assertion of a $146,786 administrative claim in Debtors' cases may prevent such disinterested status.  *See* 11 U.S.C. §§ 1104(d) (requiring the UST to appoint a "disinterested person" to serve as a chapter 11 trustee), 101(14C) (defining "disinterested person" to mean a person who "is not a creditor").  Although a distinction could be argued that the claim is held by Cordes & Company, Inc. and not Mr. Cordes as an individual.

Accordingly, the UST's Motion is GRANTED in part and DENIED in part.  The request to dismiss or convert these cases is DENIED.  The request for an order directing appointment of a chapter 11 trustee is GRANTED. The UST is hereby ORDERED to appoint a chapter 11 trustee in these cases.

DATED this 14th day of September, 2016.    BY THE COURT:

*Elizabeth E. Brown*

Elizabeth E. Brown, Bankruptcy Judge

8